IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EALISE CRUMB                         :

                                :

    v.                           :   Civil Action No. DKC 15-1719

                                :

MCDONALD'S CORPORATION, et al.       :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case are motions to dismiss or, in the alternative, for summary judgment filed by: (1) Defendants Prince George's County, Maryland ("Prince George's County"), Prince George's County Human Relations Commission (the "PGCHRC"), and D. Michael Lyles, Executive Director of the PGCHRC (ECF No. 16); (2) Defendant McDonald's Corporation ("McDonald's") (ECF No. 31); (3) Defendant Raoul Alvarez, President of RAM Foods, Inc. ("RAM Foods") (ECF No. 32); and (4) Defendant RAM Foods (ECF No. 44). Also pending and ready for resolution are three motions for leave to file a surreply filed by Plaintiff Ealise Crumb ("Plaintiff"). (ECF Nos. 62; 63; 64).[1] The relevant issues have been fully briefed, and the court now

---

[1] Plaintiff also filed a motion for leave to file a response in excess of the 50-page limit. (ECF No. 56). RAM Foods did not oppose this motion and did not raise an issue regarding the length of Plaintiff's response in its reply. (ECF No. 59). Accordingly, Plaintiff's motion will be denied as moot.

rules, no hearing being deemed necessary.   Local Rule 105.6.
For the following reasons, the motion to dismiss filed by Prince
George's County, the PGCHRC, and Mr. Lyles will be granted.   The
motion to dismiss filed by McDonald's will be granted in part
and denied in part.   The motion to dismiss filed by Mr. Alvarez
will be granted.   The motion to dismiss filed by RAM Foods will
be granted in part and denied in part.   Plaintiff's motions for
leave to file surreplies will be denied.

## I.   Background

### A.   Factual Background

Unless otherwise noted, the facts outlined here are alleged
in the complaint and construed in the light most favorable to
Plaintiff.   (ECF No. 2).   Additional facts will be discussed in
the analysis section.   This case stems from several interactions
between Plaintiff, who is an African American woman, and staff
at a McDonald's restaurant in Oxon Hill, Maryland (the
"restaurant"), which is owned and operated by RAM Foods.

On March 19, 2013, Plaintiff ordered lunch at the
restaurant, which included an order of French fries.   Plaintiff
told a restaurant employee, "I want my fries hot, right out of
the grease."   (*Id.* ¶ 25).   Plaintiff avers that she began
specifically asking for hot, fresh fries because she routinely
was served lukewarm, overcooked fries, and multiple complaints
regarding the fries were unsuccessful.   Despite her request,

Plaintiff received lukewarm French fries on March 19.  Plaintiff alleges that she "requested hot French fries three times before she received her order of hot French fries because the female employee, who was Hispanic, was mixing warm French fries with hot French fries."  (ECF No. 2 ¶ 41).  According to Plaintiff, Ms. Alston, a female African American restaurant employee, "placed the bag of food on the counter and . . . [w]hen Plaintiff reached to pick up the bag, Alston called Plaintiff a 'big fat black hussy.'"  (*Id.* ¶ 43).

Plaintiff asked another restaurant employee to speak with the manager.  Plaintiff initially spoke with a person she thought was the manager, but was actually the owner's father.  Plaintiff then spoke with the manager, Mr. Edwards, and relayed what Ms. Alston had called her.  Ms. Alston told Mr. Edwards that Plaintiff "snatched the bag" out of her hand.  (*Id.* ¶ 69).  Plaintiff asked Mr. Edwards to look at the security monitor so he could see that she didn't "snatch the bag out of [Ms. Alston's] hand."  (*Id.* ¶ 70).  When Mr. Edwards did not look at the security footage, Plaintiff demanded that Ms. Alston admit what she said, but Ms. Alston refused to admit or deny that she called Plaintiff a "big fat black hussy."  Mr. Edwards refused Plaintiff's requests to provide her with contact information for McDonald's headquarters or the franchise owner, ultimately providing Plaintiff with his name and the store address and

number.  Plaintiff asserts that she told the manager to save the security footage, but he did not do so.  (*Id.* ¶¶ 88-89).

Plaintiff next returned to the restaurant on May 27, 2013. According to Plaintiff, as she was waiting in line to order breakfast, Ms. Alston emerged from the back of the restaurant and stood behind the counter.  Plaintiff alleges that Ms. Alston whispered something to a cashier at the counter and laughed. Plaintiff placed her order at the counter and asked the cashier to handle her order because Plaintiff "didn't want an encounter with [Ms.] Alston."  (*Id.* ¶ 105).  Plaintiff avers that the cashier said, "No problem, I can prepare your order," and took Plaintiff's money.  (*Id.* ¶¶ 107-108).  As the cashier was preparing Plaintiff's order, Ms. Alston asked the cashier what she was doing and told her to "[g]et back to the register" because she was "getting the food."  (*Id.* ¶ 111).  Plaintiff inquired what was happening, and the cashier informed her that "[t]he manager told [the cashier] not to get [Plaintiff's] food" because she was a cashier, and cashiers "can't get food."  (*Id.* ¶ 112).  Ms. Alston then told the cashier to give Plaintiff her money back "because she's not going to be served here."  (*Id.* ¶ 113).  Plaintiff asked to speak to the manager and was informed that Ms. Alston was the manager on duty.  Plaintiff was provided at least a partial refund and was not provided the food she ordered.

On May 28, 2013, Plaintiff called Mr. Edwards to inform him about Ms. Alston's refusal to serve her the day before.  Mr. Edwards offered to meet with Plaintiff to discuss her concerns, but he did not want to meet with her at the restaurant. Plaintiff refused Mr. Edwards' offer because she did not want to meet him at a location other than the restaurant.  On May 31, Plaintiff wrote a letter to McDonald's corporate headquarters regarding the aforementioned incidents.  (ECF No. 57-7).

**B.  Procedural History**

According to Plaintiff, she "filed a discrimination complaint" with the PGCHRC on or about June 26, 2013.  (ECF No. 2 ¶ 144).  Plaintiff alleges that she attempted to assert a claim of discrimination based on race but was told that she could not do so because Ms. Alston was also African American. (*Id.* ¶ 146).  On July 10, Plaintiff filed a charge of discrimination with the PGCHRC.  (ECF No. 16-4).  Plaintiff's charge alleges that she was discriminated against based on her personal appearance in violation of the Prince George's County Code.  (*Id.*).  Plaintiff met with a PGCHRC investigator on August 25, 2013, during which time she was told that McDonald's, Mr. Alvarez, and RAM Foods had not yet received her charge and were granted an extension to respond.  (ECF No. 2 ¶ 307).  On November 12, Plaintiff received a call from the PGCHRC informing her that McDonald's, Mr. Alvarez, and RAM Foods were interested

5

in mediation.   Plaintiff alleges that PGCHRC staff informed her that she was not required to have an attorney present at the mediation, and that "[a] lot of people appear alone at mediations and can speak for themselves without having an attorney present to represent them." (*Id.* ¶ 320).

Plaintiff attended a mediation session led by a Ms. Nelson on March 27, 2014.   Plaintiff was accompanied at the mediation by a friend, who is a retired attorney.   During the mediation, representatives for RAM Foods informed Plaintiff that Ms. Alston was no longer employed at the restaurant, but they refused to respond to Plaintiff's inquiries into the reason for the termination of Ms. Alston's employment.   After the initial discussion, Plaintiff asserts that Ms. Nelson said to Plaintiff, "now that Ms. Alston is no longer working [at the restaurant], is there a dollar value you may wish to settle this matter for[,] and because she is no longer there should give you some satisfaction." (*Id.* ¶ 342).   Plaintiff refused to settle because she wanted to know if Ms. Alston's termination was related to her complaints.   Plaintiff avers that Ms. Nelson, after hearing Plaintiff would not settle, informed Plaintiff that she had previously worked at McDonalds and told Plaintiff, "you don't have a case." (*Id.* ¶ 349).   Plaintiff ended the mediation and told Ms. Nelson that she wanted the PGCHRC to conduct an investigation.

On August 20, 2014, Plaintiff called the PGCHRC to inquire on the status of the investigation because she had not heard anything for over four months. (*See* ECF No. 42-4, at 8). During this call, Plaintiff learned that a new investigator had been assigned to her case. Plaintiff continued to urge the PGCHRC to complete the investigation, but was told that the PGCHRC was "trying to get additional information for [her] case." (*Id.* at 9). On January 30, 2015, Plaintiff sent a fax and certified letter to Mr. Lyles questioning the perceived delay in the PGCHRC's investigation. (*Id.*). On February 2, Mr. Lyles left a message with Plaintiff acknowledging receipt of her letter and telling her, "I'm concerned, disappointed and dismayed that our staff dropped the ball on this. But I would like to speak with you about what our corrective action is going to be. . . . Let me apologize for the length of time this has taken. But I would like to speak with you personally so that we can conclude this matter in pretty short order." (*See* ECF No. 2 ¶ 155). On February 4, the PGCHRC issued a Determination that "there is insufficient evidence to support [Plaintiff's] allegation that [RAM Foods and McDonald's] denied service to [Plaintiff] based on her personal appearance." (ECF No. 16-5, at 4). The Determination informed Plaintiff that she had the right to appeal the decision within thirty days and attached, among other documents, blank forms Plaintiff could file with the

7

U.S. Equal Employment Opportunity Commission ("EEOC").   (*Id.* at 5-6).

Plaintiff, proceeding *pro se*, filed a complaint in the Circuit Court for Prince George's County on March 18, 2015. (ECF No. 2).  The complaint alleges the following counts against Defendants: discrimination based on personal appearance in violation of the Prince George's County Code, Div. 12 § 2-220 (Count I); discrimination in public accommodations because of race and disability (Counts II and III); retaliation (Count IV); negligent hiring, retention, training, and supervision (Count V); negligence (Count VI); and fraud and deceit (Count VII). After being served on May 15, Defendants timely removed the action to this court.  (ECF No. 1).  On June 18, Prince George's County, the PGCHRC, and Mr. Lyles filed the pending motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 16).  On July 30, McDonald's and Mr. Alvarez filed their motions to dismiss or, in the alternative, for summary judgment.  (ECF Nos. 31; 32).  On September 2, RAM Foods filed its motion to dismiss or, in the alternative for summary judgment.  (ECF No. 44).  Plaintiff responded to the motions (ECF Nos. 42; 52; 57), and Defendants replied (ECF Nos. 46; 59).  On December 2, Plaintiff filed the pending motions to file surreplies (ECF Nos. 62; 63; 64), which have been fully briefed (ECF Nos. 65; 66).

## II.   Standard of Review

The arguments Defendants raise in their motions implicate multiple standards of review.  First, Defendants' argument that Plaintiff failed to exhaust administrative remedies is analyzed under Fed.R.Civ.P. 12(b)(1) because it could deprive this court of jurisdiction to hear Plaintiff's claims.  *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'"  *Owens—Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore *et al.*, Moore's Federal Practice § 12.301 (3d ed. 1998)).  The plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  Dismissal for lack of subject matter jurisdiction is appropriate "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.* (citation omitted).  In its analysis, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.* (citation omitted).

Second, Defendants argue that the complaint fails to state a plausible claim for relief under Fed.R.Civ.P. 12(b)(6) or, in the alternative, that they are entitled to summary judgment. Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion to dismiss. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). If the court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). At this early stage in litigation, Defendants' motions will be analyzed as motions to dismiss. A court may, without turning a motion to dismiss into a motion for summary judgment, properly consider documents "attached to or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the

complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants

are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.").

## III. Analysis

### A.   Claims Against Prince George's County, the PGCHRC, and Mr. Lyles

### 1.   Discrimination and Retaliation Claims

Although the complaint asserts all counts against Prince George's County, the PGCHRC, and Mr. Lyles (collectively, the "County Defendants"), Plaintiff "is willing to dismiss [Counts II, III, and IV,] as she's suing the County Defendants for negligence." (ECF No. 42, at 24). Plaintiff further notes in her opposition that she "is not suing the County Defendants under Counts I through IV, . . . but is suing them for negligence." (*Id.* at 42). The gravamen of Plaintiff's claims against the County Defendants is that they negligently or fraudulently failed to investigate her discrimination claim against McDonalds, Mr. Alvarez, and RAM Foods. Accordingly, Plaintiff's discrimination and retaliation claims against the County Defendants in Counts I through IV will be dismissed.

2.    **Common Law Tort Claims**

a.    **Governmental Immunity for Prince George's County and the PGCHRC**[2]

Defendants Prince George's County and the PGCHRC assert that governmental immunity bars all of Plaintiff's common law tort claims against them (Counts V, VI, and VII).   The doctrine of governmental immunity is "deeply ingrained in Maryland law" and may not be waived without express or implied statutory authorization.   *Nam v. Montgomery Cnty.*, 127 Md.App. 172, 182 (1999).[3]   The doctrine provides immunity from common law tort suits for governmental, as opposed to proprietary, acts.   *DiPino v. Davis*, 354 Md. 18, 47 (1999); *see also Ashton v. Brown*, 339 Md. 70, 101 (1995) (citing *Clea v. City of Baltimore*, 312 Md. 662, 667 (1988)).   Any municipality exercising a governmental function, such as Prince George's County is here, is entitled to governmental immunity.   *See Clark v. Prince George's Cnty.*, 211 Md.App. 548, 561 (2013).   As such, governmental immunity bars Plaintiff's claims against Prince George's County and the PGCHRC in Counts V, VI, and VII.

---

[2] The County Defendants are correct that claims against the PGCHRC are properly viewed as claims against Prince George's County itself.

[3] The LGTCA, which imposes a degree of liability on local governments, does not waive governmental immunity. *See Khawaja v. Mayor & City Council, City of Rockville*, 89 Md.App. 314, 325 (1991).

   **b.   Public Official Immunity and Plaintiff's Failure to
State a Fraud and Deceit Claim as to Mr. Lyles**

   **i.   Public Official Immunity for Negligence**

As the Court of Appeals recently explained, "[c]ommon law
public official immunity applies to 'public officials . . . who
perform negligent acts during the course of their discretionary
(as opposed to ministerial) duties.'" *Cooper v. Rodriguez*, 443
Md. 680, 713 (2015) (quoting *Houghton v. Forrest*, 412 Md. 578,
585 (2010)).  Common law public official immunity does not apply
to intentional torts. *Houghton*, 412 Md. at 586.  The term
"'discretion' denotes freedom to act according to one's judgment
in the absence of a hard and fast rule.  When applied to public
officials, discretion is the power conferred upon them by law to
act officially under certain circumstances according to their
own judgment and conscience and uncontrolled by the judgment or
conscience of others." *Cooper*, 443 Md. at 714 (citation and
internal quotation marks omitted).  Plaintiff's passing
reference to ministerial acts notwithstanding, Mr. Lyles was
performing discretionary duties in his role as PGCHRC's
executive director.

Plaintiff asserts that public official immunity does not
bar her claims against Mr. Lyles because he acted with actual
malice or gross negligence.  "In this context, the Maryland
courts define malice as an 'evil or wrongful motive, intent to

injure, knowing and deliberate wrongdoing, ill will, or fraud.'" *Traversa v. Ford*, 718 F.Supp.2d 639, 648 (D.Md. 2010) (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)).   In Maryland, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (citation and internal quotation marks omitted).   "Plaintiffs who assert malice or gross negligence are held to a high pleading standard that may not be satisfied by conclusory allegations."   *Traversa*, 718 F.Supp.2d at 648. Plaintiff's conclusory assertions that Mr. Lyles acted with actual malice or gross negligence are not sufficient to circumvent Mr. Lyles's public official immunity.   At most, Plaintiff alleges facts showing that Mr. Lyles and the PGCHRC were negligent in pursuing her investigation in a timely manner. *See id.* (noting that the allegations "suggest individual negligence and bureaucratic mismanagement," but not "malice, evil intention, or wanton, willful, or reckless disregard"). Nothing Plaintiff alleges comes close to rising to the level of actual malice or gross negligence.   Accordingly, public official immunity bars Plaintiff's claims of negligence against Mr. Lyles in Counts V and VI.

15

###### ii.  Failure to State a Fraud and Deceit Claim

Plaintiff alleges that Mr. Lyles fraudulently misrepresented the procedures of mediation and investigation and fraudulently concealed various facts, including that Ms. Nelson previously worked for McDonald's, and that the investigator working on Plaintiff's case changed. (ECF No. 2 ¶¶ 369-375). Plaintiff has failed to plead facts establishing a plausible fraudulent concealment claim because the PGCHRC disclosed the information that she alleges was concealed: Ms. Nelson informed Plaintiff about her previous employment during the mediation, and the new investigator on Plaintiff's case informed her of the change in investigators and told her that he was working on the investigation.

To establish a claim for fraud or deceit, Plaintiff must allege: (1) that Mr. Lyles made a false representation; (2) that its falsity was either known to Mr. Lyles or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding Plaintiff; (4) that Plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that Plaintiff suffered compensable injury resulting from the misrepresentation. *See Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 544 (2007) (citations omitted). Plaintiff's conclusory assertions that Mr. Lyles fraudulently misrepresented

16

mediation and investigation procedures are not sufficient to state a claim for fraud. Plaintiff has not plausibly alleged any false representations. Plaintiff may be justified in her displeasure with the length of time the PGCHRC took to complete its investigation into her claim. As soon as Plaintiff alerted Mr. Lyles to the delay, however, he personally responded to her and saw that the investigation was concluded in a timely manner. Accordingly, Plaintiff's claims of fraud and deceit against Mr. Lyles in Count VII will be dismissed.[4]

B. **Claims Against McDonald's, Mr. Alvarez, and RAM Foods**[5]

1. **Threshold Matters Regarding McDonald's and Mr. Alvarez**

McDonald's contends that Plaintiff has not alleged sufficient facts showing that McDonald's may be held vicariously liable for acts committed by employees of RAM Foods at a restaurant owned and operated by RAM Foods. Plaintiff counters that McDonald's exercised sufficient control over RAM Foods and the restaurant to warrant vicarious liability. As Judge Titus noted recently, "[m]ost cases in Maryland and in the Fourth Circuit that have examined the question of the liability of a

---

[4] The County Defendants also argue that the Local Government Tort Claims Act bars Plaintiff's common law tort claims. It is not necessary to decide this question because Plaintiff's common law tort claims against the County Defendants will be dismissed.

[5] For ease of reference, the term "Defendants" in this section refers to McDonald's, Mr. Alvarez, and RAM Foods, collectively unless otherwise noted.

franchisor for injuries sustained on the premises of a hotel owned and managed by a franchisee focus on the issue of control." *DiFederico v. Marriott Intern., Inc.*, -- F.3d --, 2015 WL 5516843, at *6 (D.Md. Sept. 18, 2015).[6] *DiFederico* and the cases Judge Titus cites were decided based on evidence of control within the records at the summary judgment stage. *See id.* It is premature, at the motion to dismiss stage, and without a sufficiently-developed record, to determine if McDonald's exercised sufficient control over RAM Foods and the operations of the restaurant.[7] Accordingly, the motions filed by McDonald's and RAM Foods will be analyzed together.

Mr. Alvarez argues that Plaintiff may not bring her claims against him individually as owner of RAM Foods. "[W]hen a corporation violates a statute, individuals who 'voluntarily and intentionally caused the corporation to act' in violation of the statute can be personally liable for those statutory violations, such as when a director votes for the commission of an unlawful act." *State of Md. v. Univ. Elections*, 787 F.Supp.2d 408, 416 (D.Md. 2011) (quoting *Tillman v. Wheaton-Haven Recreation Ass'n,*

---

[6] The alleged injury in *DiFederico* took place at a hotel, but the same principles apply to a franchise restaurant.

[7] McDonald's also asserts in a footnote that it is not the appropriate defendant because the franchisor is actually McDonald's USA, LLC, not McDonald's Corporation. (ECF No. 31-1, at 4 n.2). This unsupported assertion does not warrant granting McDonald's motion to dismiss.

*Inc.*, 517 F.2d 1141, 1144 (4th Cir. 1975)).   Here, however, Plaintiff pleads no facts showing that Mr. Alvarez participated in or caused Ms. Alston's allegedly discriminatory or retaliatory acts.   Accordingly, Plaintiff's claims against Mr. Alvarez will be dismissed.

### 2.   Negligence Claims

The complaint asserts a claim of negligent hiring, retention, training, and supervision (Count V) and a separate claim of general "negligence" (Count VI).   It is unclear how these two claims differ, so they will be analyzed as asserting a single claim of negligent hiring, retention, training, and supervision.   Defendants argue that this claim is not cognizable against an employer for failing to prevent a harm that is not a recognized injury under common law.   (ECF No. 31-1, at 3-4).   "A cause of action for negligent retention existed at common law, and, accordingly, may only be predicated on common law causes of action." *Demby v. Preston Trucking Co., Inc.*, 961 F.Supp. 873, 881-82 (D.Md. 1997) (citing *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F.Supp. 720, 751 (D.Md. 1996); *see also Braxton v. Domino's Pizza LLC*, No. RDB-06-1191, 2006 WL 3780894, at *5 (D.Md. Dec. 21, 2006).   Here, the harm Plaintiff alleges is not a violation of common law, but rather a statutory violation.

Accordingly, Plaintiff's negligence claims in Counts V and VI will be dismissed.[8]

### 3. Fraud and Deceit Claim

Plaintiff asserts that Defendants engaged in multiple misrepresentations regarding company policies and procedures. For example, Plaintiff alleges that Defendants "misrepresented [their] company to Plaintiff by ensuring her that supervisors must follow up on allegations of wrongdoing that are brought to their attention and take appropriate corrective or disciplinary action." (ECF No. 2 ¶ 378). In addition, Plaintiff appears to contend that she relied on Defendants' purported misrepresentations that they emphasize customer satisfaction and do not discriminate. (*Id.* ¶¶ 376-381).

Defendants do not put forth any argument whatsoever against Plaintiff's fraud and deceit claim. Defendants' motions do not mention the fraud and deceit claim, and the County Defendants' motion, which McDonald's, Mr. Alvarez, and RAM Foods incorporated into their motions, does not address the merits of the claim. Accordingly, if Defendants intended to move to

---

[8] To the extent Plaintiff is requesting leave to amend in order to assert claims of intentional infliction of emotional distress and negligent infliction of emotional distress (*see* ECF No. 52, at 37), such a request is denied at this time. Plaintiff's one-page argument in her response to one of the pending motions to dismiss is not sufficient to be construed as a proper motion for leave to amend. Should Plaintiff wish to move for leave to amend to add these tort claims, or any other claims, she is directed to Fed.R.Civ.P. 15 and Local Rule 103.6.

dismiss the fraud and deceit claims in Count VII, the motion will be denied.

### 4.   Discrimination and Retaliation Claims

### a.   Plaintiff's Failure to Exhaust

Defendants argue that all of Plaintiff's discrimination and retaliation claims must be dismissed because she failed to exhaust her administrative remedies.   The only administrative process that has occurred in this case is Plaintiff's filing of a charge of discrimination based on personal appearance with the PGCHRC and the PGCHRC's issuance of a Determination.   The exhaustion requirements for each of Plaintiff's claims will be taken in turn.

First, Plaintiff brings Count I against Defendants under the Prince George's County Code.   Such claims "'may not be commenced sooner than 45 days after the aggrieved person files a complaint with the county [unit] responsible for handling violations of the county discrimination laws.'"   *Rachel-Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 743 (D.Md. 2003) (quoting Md. Code, State Gov't § 20-1202(c)(2)(i)).[9]   Here, Plaintiff commenced this action in state court well over 45 days after filing the charge of discrimination with the PGCHRC.

---

[9] The court in *Rachel-Smith* cited to an earlier version of this statute.   The language of the two statutes is materially identical.

21

Accordingly, failure to exhaust administrative remedies does not bar Plaintiff's claims in Count I.

In Count II, Plaintiff contends that she was denied equal enjoyment of the services at the restaurant on the basis of race in violation of 42 U.S.C. § 2000a ("Title II"). In light of Plaintiff's *pro se* status and the facts she pleads in her complaint, the court also construes Count II as asserting a claim of racial discrimination under 42 U.S.C § 1981, which protects against racial discrimination in the making and enforcement of private contracts, including the contractual relationship that arises between proprietor and customer in a restaurant setting. *See Gennell v. Denny's Corp.*, 378 F.Supp.2d 551, 557 (D.Md. 2005) (citation omitted). Defendants appear to have construed Count II as asserting a § 1981 claim (ECF No. 44-1, at 3), and Plaintiff expressly cites to § 1981 in her opposition (ECF No. 57, at 34). Although a plaintiff may not amend a complaint in an opposition brief, given Plaintiff's *pro se* status and the fact that Defendants viewed the complaint as asserting a § 1981 claim, it is appropriate for the court to construe Count II as asserting such a claim.

Defendants fail to state correctly the requirements Title II or § 1981 place on a plaintiff before bringing an action, instead citing to cases addressing failure to exhaust provisions in other laws, such as Title VII. A plaintiff bringing an

22

action under Title II is *not* required to exhaust administrative remedies. 42 U.S.C. § 2000a-6(a). In a state or locality that has a laws prohibiting the alleged conduct, and state or local authorities that can provide relief from such conduct, "no civil action may be brought under [Title II] before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person." 42 U.S.C § 2000a-3(c). Plaintiff provided written notice to the PGCHRC in person of the alleged discrimination. Although Plaintiff only expressly noted a claim for discrimination based on personal appearance, Plaintiff explained on the charge form that Ms. Alston called Plaintiff a "big, fat, black hussy" and later refused to serve her. (ECF No. 16-4, at 2). Such a narrative provided the PGCHRC with written notice of the alleged act or practice underlying Plaintiff's racial discrimination claim. Moreover, Plaintiff contends that she attempted to file a charge of discrimination based on race, but was discouraged from doing so because Ms. Alston is also African American. (*See* ECF No. 2 ¶ 146).

Similarly, § 1981 claims are not subject to the same exhaustion requirements as Title VII. *See Sewell v. Strayer Univ.*, 956 F.Supp.2d 658, 673 (D.Md. 2013) (citation omitted). In fact, § 1981 "has no requirement to exhaust administrative

claims and . . . [is] limited only by its limitations statute." *Clarke v. DynCorp Intern. LLC*, 962 F.Supp.2d 781, 789 (D.Md. 2013) (citing *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 334 (4th Cir. 1983)).   Defendants have made no statute of limitations argument, and none appears to exist.   Accordingly, failure to exhaust administrative remedies does not bar Plaintiff's claims in Count II.

Plaintiff asserts a claim for discrimination in public accommodations under the Americans with Disability Act (the "ADA") in Count III.   Unlike the ADA's employment provisions, which incorporated the procedural requirements of Title VII of the Civil Rights Act, the ADA's public accommodation provisions incorporated those of Title II.   42 U.S.C. § 12188(a)(1). Although Plaintiff's charge and written narrative of the facts provided sufficient notice of her race-based discrimination claim under Title II, they did not provide sufficient written notice of disability-based discrimination under the ADA. Furthermore, Plaintiff does not contend that she attempted to file a disability-based discrimination charge with the PGCHRC. Accordingly, Plaintiff's claims under the ADA in Count III will be dismissed.

It is not entirely clear under what law Plaintiff attempts to bring her retaliation claim in Count IV.   Accordingly, the court will construe Plaintiff's retaliation claim as being

brought under Title II. 42 U.S.C. § 2000a-2. The same procedural requirements apply to retaliation claims brought under Title II as to discrimination claims. Accordingly, for reasons stated above, Plaintiff's retaliation claims in Count IV are not barred for failure to exhaust.

    **b.** **Motion to Dismiss Counts I, II, and IV for Failure to State a Claim**

Defendants argue that Plaintiff has not stated a claim of discrimination based on personal appearance under the Prince George's County Code. The Prince George's County Code defines "personal appearance" as "the outward appearance of any person irrespective of sex *with regard to hair style, beards, or manner of dress*." Prince George's Cnty. Code, Div. 12-1 § 2-186(a)(14) (emphasis added). Though inartfully drafted, the plain language of the personal appearance provision appears only to prohibit discrimination based on selected enumerated characteristics, namely, "hair style, beards, or manner of dress," none of which are involved in Plaintiff's claims. Moreover, in her opposition, Plaintiff ties her personal appearance claim to her racial discrimination claim, noting that "[w]hen [Ms.] Alston called Plaintiff a "big fat black hussy" she was discriminating against Plaintiff because of her race, Black, which is an external appearance." (ECF No. 57, at 61). Plaintiff further explains that she is "tying [the] unprotected physical

characteristic" of personal appearance to her racial and disability discrimination claims. (*Id.* at 59-60). Thus, Plaintiff's citation to the personal appearance provision in the County Code is unnecessary to sustain her discrimination claims. Accordingly, the claims in Count I will be dismissed.

Under Title II, "[t]o prevail, if the defendant is a restaurateur, the plaintiff must establish that (1) the restaurant affects commerce; (2) the restaurant is a public accommodation; and (3) the restaurateur denied plaintiff full and equal enjoyment of the establishment" for reasons based on race. *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694, 709 (D.Md. 2000) (citing 42 U.S.C. § 200a; *Wooten v. Moore*, 400 F.2d 239, 241 (4th Cir. 1969); *United States v. DeRosier*, 473 F.2d 749 (5th Cir. 1973)). To prove a § 1981 claim, Plaintiff must "ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). Defendants structure their arguments under the *McDonnell Douglas* burden-shifting framework, arguing that Plaintiff cannot establish a *prima facie* case giving rise to an inference of discrimination. (*See* ECF No. 44-1, at 3-12). Although courts utilize "the well-settled *McDonnell Douglas* evidentiary scheme" in analyzing both Title II and § 1981 claims, *Callwood*, 98

F.Supp.2d at 709, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Eruanga v. Grafton School, Inc.*, 181 F.Supp.2d 514, 520 (D.Md. 2002); *see also Denny*, 456 F.3d at 434 n.2. Here, Plaintiff alleges that Ms. Alston called her a "big fat black hussy." Ms. Alston then refused to serve Plaintiff the next time Plaintiff went to the restaurant. The facts alleged in the complaint plausibly allege direct evidence of a racial motivation. The plaintiffs in each case cited by Defendants, including *Gennell*, 378 F.Supp.2d 551, were forced to rely on circumstantial evidence to show an inference of discrimination because they did not put forth any direct evidence showing a racial animus or motive.[10] Plaintiff's assertions of direct evidence that she was denied service based on race are sufficient to survive a motion to dismiss. *See Denny*, 456 F.3d at 434 (noting that "[t]here can be no doubt that plaintiffs have presented not only strong but direct evidence of the salon's intent do discriminate," which included a statement by an employee that the salon did not "do black people's hair"). The Fourth Circuit's reasoning in *Denny*, which was at the summary judgment stage, illustrates why Defendants' motion to dismiss must be denied. The Fourth

---

[10] Defendants also confusingly argue that Plaintiff was not denied any goods or services despite Plaintiff's clear allegations, and evidence in the form of receipts, that she was denied service on May 27, 2013.

27

Circuit explained that "[w]hile there may be a more benign explanation for the salon's refusal to fully serve plaintiffs, the receptionist's overt racial explanation creates a trial dispute." *Id.* at 435.   Accordingly Defendants' motions to dismiss Plaintiff's claims in Count II will be denied.

Plaintiff contends that Ms. Alston did not serve her on May 27, 2013 in retaliation for Plaintiff reporting her earlier comments to Mr. Edwards.   Title II's antiretaliation provision provides, that "[n]o person shall . . . punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by" Title II.   42 U.S.C. § 2000a-2. Defendants argue that Plaintiff's complaint to Mr. Edwards is not a protected activity and "cannot form the basis for a retaliation claim."   (ECF No. 44-1, at 16).   Case law interpreting Title II's antiretaliation provision is scarce, and the cases cited by Defendants are construing the antiretaliation provisions of the ADA, not Title II.   It appears, however, that Plaintiff's complaint to Mr. Edwards is a protected activity under Title II.   She attempted to exercise her right to the full and equal enjoyment of a public accommodation without discrimination by complaining about Ms. Alston's racially charged comment to Mr. Edwards.   Accordingly, Defendants' motion

to dismiss Plaintiff's retaliation claim in Count IV will be denied.[11]

### C.    Plaintiff's Motions to File Surreplies

Local Rule 105.2(a) states that, "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Surreplies are generally disfavored. *Chambers v. King Buick GMC, LLC*, 43 F.Supp.3d 575, 624 (D.Md. 2014) (citing *Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013)). The court may permit a surreply when a party would not otherwise have an opportunity to respond to arguments raised for the first time in the opposing party's reply. *See Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003). Defendants' replies present no new arguments or facts beyond those included in their initial motions, and Plaintiff's motion for leave to file surreplies does not assert as such. Although Plaintiff contends that Defendants' replies contain "multiple inaccurate assertions that cannot go unrebutted," she has had sufficient opportunity to present her arguments in three

---

[11] This analysis comports with the general approach courts take to Title VII retaliation claims regarding a plaintiff's complaints of discrimination in the workplace. *See, e.g.*, *Burgess v. Bowen*, 466 F.App'x 272, 282 (4th Cir. 2012) (citation omitted) (holding "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.").

separate opposition briefs.   Accordingly, Plaintiff's motions for leave to file surreplies will be denied.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Prince George's County, the PGCHRC, and Mr. Lyles will be granted.   The motion to dismiss filed by McDonald's will be granted in part and denied in part.   The motion to dismiss filed by Mr. Alvarez will be granted.   The motion to dismiss filed by RAM Foods will be granted in part and denied in part. Plaintiff's motions for leave to file surreplies will be denied. A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge
