IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EALISE CRUMB                    :
                                :
                                :
   v.                           :   Civil Action No. DKC 15-1719
                                :
McDONALD'S CORPORATION, et al.  :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case are a motion for summary judgment filed by Defendants McDonald's Corporation and Ram Foods, Inc. ("RAM Foods") (collectively, "Defendants") (ECF No. 129) and a motion to deny or defer summary judgment pursuant to Fed.R.Civ.P. 56(d) filed by Plaintiff Ealise Crumb ("Plaintiff") (ECF No. 133). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part, and denied in part, and the motion to deny or defer summary judgment will be denied.

**I.   Background**

A more complete recitation of the factual and procedural background of this case can be found in the court's prior memorandum opinion resolving Defendants' motion to dismiss. (ECF No. 67, at 2-8). The remaining counts against Defendants

are racial discrimination in a place of public accommodation in violation of 42 U.S.C. § 2000a ("Title II") (Count II), racial discrimination in violation of 42 U.S.C. § 1981 (Count II), retaliation (Count IV), and fraud and deceit (Count VII).[1] Plaintiff's claims stem from two visits to a McDonald's restaurant in Oxon Hill, Maryland (the "restaurant"), which is owned and operated by Defendant RAM Foods, Inc. ("RAM Foods"). Plaintiff alleges that on March 19, 2013, after requesting hot fries "right out of the grease," restaurant employee Ashley Alston "placed the bag of food on the counter and . . . [w]hen Plaintiff reached to pick up the bag, [Ms.] Alston called Plaintiff a 'big fat black hussy.'" (ECF No. 2 ¶¶ 39-43). Plaintiff complained to the restaurant manager, Greg Edwards, and relayed what Ms. Alston had called her. (*Id.* ¶¶ 66-68). Mr. Edwards asked Plaintiff to allow him to handle her complaint at the franchise without involving Defendant McDonald's Corporation. (*Id.*). Plaintiff alleges that when she returned to the restaurant on May 27, Ms. Alston refused to serve Plaintiff and ordered the cashier who took Plaintiff's order to

---

[1] In its prior memorandum opinion, the court construed Count II of Plaintiff's complaint as also asserting a claim of racial discrimination under 42 U.S.C. § 1981, which protects against racial discrimination in the making and enforcement of private contracts, including the contractual relationship that arises between proprietor and customer in a restaurant setting. (*See* ECF No. 67, at 22); *Gennell v. Denny's Corp.*, 378 F.Supp.2d 551, 557 (D.Md. 2005) (citation omitted).

2

return Plaintiff's money and refuse to serve her. (*Id.* ¶¶ 91-94).

Defendants filed the pending motion for summary judgment on July 19, 2017. (ECF No. 129). Plaintiff filed a motion to deny or defer Defendants' motion for summary judgment on August 4. (ECF No. 133). Defendants submitted a reply in support of their motion for summary judgment (ECF No. 134), and Plaintiff submitted a reply in support of her motion to deny or defer (ECF No. 135).

**II. Motion to Deny or Defer Summary Judgment**

**A. Standard of Review**

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Rule 56(d) allows the court to deny a motion for summary judgment or delay ruling on the motion until additional discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). "Such a motion is only appropriate in situations where the discovery sought could not have been obtained during the course of normal discovery." *Zimmerman v. Novartis Pharms. Corp.*, 287 F.R.D. 357, 363 (D.Md. 2012) (citation omitted). Notably, "Rule 56(d) does not authorize

3

'fishing expedition[s].'" *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F.Supp.2d 674, 683 (D.Md. 2013) (citation omitted). Courts interpreting Rule 56(d) have consistently held that a nonmovant's request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted); *see Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (upholding the district court's summary judgment ruling despite the plaintiff's Rule 56(d) request because she "has not explained . . . how the information [sought in discovery] could possibly create a genuine issue of material fact sufficient for her to survive summary judgment, or otherwise affect the court's analysis"). "In other words, a nonmovant must provide 'a reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact' in order for such a request to be granted." *Agelli v. Sebelius*, No. DKC-13-497, 2014 WL 347630, at *9 (D.Md. Jan. 30, 2014) (quoting *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010)).

**B. Analysis**

Plaintiff's Rule 56(d) affidavit seeks several forms of discovery. First, Plaintiff requests that the court "permit [] discovery to be completed" because "[Defendants] have not

4

provided substantial answers to the interrogatories and requests to produce, objecting to most of them, not answering some of them and providing only sketchy and evasive answers to most of the rest." (ECF No. 133-3 ¶ 65). Discovery in this case closed on September 6, 2016. Plaintiff has had multiple opportunities to file a motion to compel regarding Defendants' discovery responses. Plaintiff filed two motions for an extension of time to file a motion to compel, which the court granted, as well as a third motion for an extension of time, which the court denied, refusing to allow Plaintiff's alleged discovery dispute to delay the resolution of this case indefinitely. (*See* ECF Nos. 120; 124; 128, at 3).

Plaintiff also states that she is entitled to discovery on "the true identity of the employee who discriminated . . . and retaliated against [her]" and that she "should not have to rely on the Defendants" to tell her whether the employee's true name is Ashley Alston or Ashley Austin. (ECF No. 133-3 ¶ 69). Plaintiff requests this court to issue a subpoena to the department of motor vehicles for Plaintiff to ascertain the "true identity of this individual." (*Id.*). This request stems from an insurance form in which the employee's last name was recorded as "Austin," instead of Alston. "Defendants contend that the form contains a typo (ECF No. 84, at 1), and have repeatedly and consistently identified the employee's name as

5

'Alston.'" (ECF No. 95, at 6). Moreover, whether the employee's last name is Alston or Austin does not create a genuine issue of material fact sufficient to defeat summary judgment and Plaintiff's request will be denied. Additionally, Plaintiff requests this court to issue a subpoena to the Prince George's County Human Relations Commission "so that [Plaintiff] can inspect the Commission's file." (ECF No. 133-3 ¶ 79). The Commission is no longer a party to this case as all claims against it were dismissed. (ECF No. 68 ¶ 5). Plaintiff's request is not only a fishing expedition but would not reveal triable issues of fact in order for such a request to be granted. Accordingly, her request will be denied.

In addition to the above discovery, Plaintiff seeks numerous categories of documents and identifies five witnesses that she wants to depose. (ECF No. 133-3 ¶¶ 72, 73, 76, 77, 80). Plaintiff had the opportunity to pursue such discovery within the limits of the rules and within the discovery period set by the court's scheduling order. Plaintiff's motion to deny or defer summary judgment to allow for additional discovery will be denied.

**III. Motion for Summary Judgment**

**A. Standard of Review**

Plaintiff has failed to submit an opposition in response to Defendants' motion for summary judgment. Plaintiff's failure,

6

however, does not fulfill the burdens imposed on Defendants by Rule 56.  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

> Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this.  Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

*Custer*, 12 F.3d at 416.

### B. Analysis

#### 1. Vicarious Liability

Plaintiff alleges that McDonald's Corporation is the franchisor of RAM Foods and thus is liable for the actions of former RAM Foods employee Ms. Alston.  (ECF No. 2 ¶ 8); *see DiFederico v. Marriott Int'l Inc.*, 130 F.Supp.3d 986, 992 (D.Md. 2015) (noting that a franchisor may be held vicariously liable

7

if it exercises direct control over a particular activity of the franchisee that results in injury). Defendants argue that McDonald's Corporation is not an appropriate defendant because the franchisor is actually McDonald's USA, LLC, not McDonald's Corporation. (ECF No. 129-1, at 9). Defendants put forth sufficient evidence to support their assertion. (ECF No. 129-3, at 36-37). Therefore, summary judgment will be granted in favor of McDonald's Corporation.[2]

Citing to cases to support the proposition that "a negligent supervision claim may not be predicated upon a race discrimination claim," Defendant argues that it "cannot be held vicariously liable for [Ms. Alston's] alleged racial discrimination as a matter of law." (ECF No. 129-1, at 8-9). Plaintiff's negligent supervision claim was dismissed by this court in its prior memorandum opinion (ECF No. 67, at 19-20), and Plaintiff's racial discrimination claims under § 1981 and Title II remain. An employer can be liable under § 1981 and Title II for the actions of its employees when they are acting within the scope of employment. *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694, 709 (D.Md. 2000). Therefore, Defendant is not entitled to summary judgment and can be held liable for Ms. Alston's actions within the scope of her employment.

---

[2] Unless otherwise noted, all further references to "Defendant" refer to RAM Foods.

8

**2. Discrimination in Public Accommodations**

In Count II, Plaintiff contends that she was denied equal enjoyment of the services at the restaurant on the basis of race in violation of Title II. Under Title II, "[t]o prevail, if the defendant is a restaurateur, the plaintiff must establish that (1) the restaurant affects commerce; (2) the restaurant is a public accommodation; and (3) the restaurateur denied plaintiff full and equal enjoyment of the establishment" for reasons based on race. *Callwood*, 98 F.Supp.2d at 709 (citing 42 U.S.C. § 2000a; *Wooten v. Moore*, 400 F.2d 239, 241 (4th Cir.), *cert. denied,* 393 U.S. 1083 (1969); *United States v. DeRosier*, 473 F.2d 749 (5th Cir. 1973)). Defendant does not put forth any argument against Plaintiff's Title II claim. Therefore, in the event that Defendant intended to move for summary judgment on Plaintiff's Title II discrimination claim, the motion will be denied.

**3. Section 1981**

To establish a *prima facie* case of § 1981 discrimination in a restaurant setting, Plaintiff must show that (1) she is a member of a protected class; (2) she made herself available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and (3) she did not enjoy the privileges and benefits of the contracted for experience under

9

factual circumstances which rationally support an inference of unlawful discrimination in that (a) she was deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) she received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable. *Gennell v. Denny's Corp.*, 378 F.Supp.2d 551, 558 (D.Md. 2005) (citing *Callwood*, 98 F.Supp.2d at 707; *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257–58 (4th Cir. 2001) (noting with approval the *Callwood* formulation)).

Defendant structures its argument under the *McDonnell Douglas* burden-shifting framework, arguing that it has a nondiscriminatory reason for Ms. Alston's conduct and thus the burden shifts to Plaintiff to demonstrate that the reason is not pretext. (ECF No. 129-1, at 3). As the court noted in its prior memorandum opinion denying Defendant's motion to dismiss Plaintiff's § 1981 claim, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." (ECF No. 67, at 26-27) (quoting *Eruanga v. Grafton School, Inc.*, 181 F.Supp.2d 514, 520 (D.Md. 2002)) (citing *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 n.2 (4th Cir. 2006)). In the case cited by Defendant, *Hill v. Abercrombie & Fitch*, No. ELH-11-00910, 2011 WL 4433573 (D.Md. Sept. 20, 2011), the plaintiff did not set forth any facts to

support his allegation that he was discriminated against on the basis of race when he was approached as a suspected shoplifter and asked to leave the retail establishment, and thus, his § 1981 claim was dismissed. *See Hill*, 2011 WL 4433573, at *5-6. Here, Plaintiff testified in deposition that Ms. Alston called her a "big, fat, black hussy" when serving Plaintiff with her order on March 19. (ECF No. 129-3, at 17-18). Because there is direct evidence of a racial motivation to discriminate, the *McDonnell Douglas* burden-shifting framework is inapplicable. *See Denny*, 456 F.3d at 434 (noting that "[t]here can be no doubt that plaintiffs have presented not only strong but direct evidence of the salon's intent to discriminate," which included a statement by an employee that the salon did not do "black people's hair"). In *Denny*, the Fourth Circuit explained that "[w]hile there may be a more benign explanation for the salon's refusal to fully serve plaintiffs, the receptionist's overt racial explanation creates a trial dispute." *Id.* at 435.

Defendant next argues that the alleged insult by Ms. Alston is not sufficiently atrocious to support a claim for money damages. (ECF No. 129-1, at 6). Citing to *Gennell*, Defendant argues that "[P]laintiff must show that [] [D]efendant's behavior was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

11

community.'" (*Id.*) (citing *Gennell*, 378 F.Supp.2d at 560). Defendant recites the standard for an intentional infliction of emotional distress claim, which Plaintiff has not brought in this case. Therefore, this argument fails and Defendant's motion for summary judgment on Plaintiff's § 1981 claim will be denied.

### 4. Retaliation

The court construed Plaintiff's retaliation claim as being brought under Title II. (*See* ECF No. 67, at 24-25). Title II's antiretaliation provision provides that "[n]o person shall . . . punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by" Title II. 42 U.S.C. § 2000a-2. Plaintiff testified in deposition that Ms. Alston did not serve her on May 27 in retaliation for Plaintiff reporting Ms. Alston's comments on March 19 to Mr. Edwards. (ECF No. 129-3, at 25). Defendant argues that Plaintiff's complaint to Mr. Edwards is not a protected activity and "cannot form the basis for a retaliation claim." (ECF No. 129-1, at 11). Here, Defendant again cites to cases it did in its prior motion to dismiss construing the antiretaliation provisions of the ADA, not Title II. As this court stated in it memorandum opinion denying Defendant's motion to dismiss Plaintiff's retaliation claim, "case law interpreting Title II's antiretaliation provision is scarce . . . . It appears,

however, that Plaintiff's complaint to Mr. Edwards is a protected activity under Title II. She attempted to exercise her right to the full and equal enjoyment of a public accommodation without discrimination by complaining about Ms. Alston's racially charged comment to Mr. Edwards."[3] (ECF No. 67, at 28-29).

Alternatively, Defendant argues that "[e]ven if a colorable retaliation claim could be based on her complaint to Mr. Edwards, Plaintiff's own deposition testimony shows it was she, not Ms. Alston, who refused service." (ECF No. 129-1, at 11). The evidence presented by Defendant does not support this assertion. Plaintiff testified in deposition that "*if* [Ms. Alston] had brought the food and put it on the counter, yes, I would have told her then, I don't want you to serve me," but, more importantly, "[Ms. Alston] never even gave [Plaintiff] the opportunity" to say that. (ECF No. 129-3, at 11) (emphasis added). Plaintiff's complaint to McDonald's headquarters states that while she was waiting in line to place her order at the restaurant, Ms. Alston spoke to a cashier who subsequently never

---

[3] The court's analysis followed the general approach courts take to Title VII retaliation claims regarding a plaintiff's complaints of discrimination in the workplace. ECF No. 67, at 29, n.11 (citing *Burgess v. Bowen*, 466 F.App'x 272, 282 (4th Cir. 2012) (holding "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.")).

13

asked to service Plaintiff.  (*Id.* at 4).  When Plaintiff placed her order with another cashier, Jonelle Carr, Plaintiff asked Ms. Carr to bag her food in order to avoid an encounter with Ms. Alston.  (*Id.*).  When Ms. Carr went to bag Plaintiff's food, Ms. Alston ordered Ms. Carr to return to her register and to "[g]ive [Plaintiff] her money back because she's not going to be served here."  (*Id.* at 4-5).  Ms. Carr stated during an investigation of the incident that, "[Plaintiff] said she didn't want [Ms. Alston] bagging her food," "[Ms. Alston] refunded [Plaintiff] her money," and that "in [her] opinion," Plaintiff was denied service.  (ECF No. 129-3, at 7-8).  Defendant's argument based on what Plaintiff would have done *if* Ms. Alston served her ignores the evidence that Plaintiff was refused service on May 27 and is irrelevant to the inquiry of whether Ms. Alston refused to serve Plaintiff in retaliation for Plaintiff's complaint of discrimination to Mr. Edwards on March 19.  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim and its motion will be denied.

   5.   **Fraud or Deceit**

To establish an action for fraud or deceit Plaintiff must prove

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its

> truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 544 (2007) (citations omitted). Plaintiff asserts that Defendant engaged in multiple misrepresentations regarding company policies and procedures, including: (1) "that the basis for their entire business is that they are ethical, truthful, and dependable"; (2) "that they place the customer experience at the core of all they do"; (3) "that supervisors must follow up on allegations of wrongdoing that are brought to their attention and take appropriate corrective or disciplinary action"; (4) "that they accept the obligation to stop or prevent actions that could harm customers, the System or McDonald's reputation, and to report any such actions as soon as they occur"; and (5) that they are "caring of their customers and the community" and "want every customer to have a great experience every time they visit McDonald's." (*See* ECF No. 2 ¶¶ 376-81). Defendant refutes only Plaintiff's allegation that it misrepresented that supervisors will follow up on allegations of wrongdoing by employees and take corrective or disciplinary action. Defendant asserts that it is clear from Plaintiff's deposition testimony that Plaintiff's fraud or deceit claim is "based on Mr. Edwards'

15

false assurance that he would take care of her complaint against Ms. Alston in an effort to keep her from filing a complaint with McDonald's Corporation."  (ECF Nos. 129-1, at 12; 129-2 ¶ 12). The portion of Plaintiff's deposition testimony submitted by Defendant, however, is not as clear as they purport it to be. Plaintiff testified in deposition that, "the basis for my claim is outlined in my complaint . . . . But my basis for fraud is that, first, Mr. Edwards said that they would handle the situation.  They would investigate.  And they did nothing." (ECF No. 129-3, at 27).  Plaintiff testifies that Mr. Edwards' statement that he would take care of her complaint and subsequent failure to investigate and take corrective or disciplinary action was only one of the bases for her fraud or deceit claim.  Defendant asserts that Plaintiff was not deceived by Mr. Edwards's statement because she did not rely on it, and has presented Plaintiff's deposition testimony that "[she] really didn't expect him" to do anything about her complaint. (ECF No. 129-3, at 31-32).  Accordingly, there is no dispute as to whether Plaintiff relied on Mr. Edwards' alleged misrepresentation, and thus her fraud or deceit claim cannot stand alone on that basis.  Defendant has not put forth any argument to refute the other bases of Plaintiff's fraud or deceit claim.  Therefore, the court will grant summary judgment in favor of Defendant only as to Plaintiff's claim that

16

Defendant misrepresented that supervisors will follow up on allegations of wrongdoing by employees and take corrective or disciplinary action.

Lastly, Defendant states that "[Plaintiff] claims no special damages." (ECF No. 129-1, at 12). Defendant's statement is irrelevant as Plaintiff is not required to claim special damages, only that she suffered compensable damages directly resulting from the misrepresentation whether general or special. *See Moscarillo,* 398 Md. at 544. Therefore, Defendant's motion for summary judgment on Plaintiff's fraud or deceit claim will be denied.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendants McDonald's Corporation and RAMS Food will be granted in part, and denied in part, and Plaintiff's motion to deny or defer summary judgment will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge